**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THERON BRADLEY, and TOMMY JENKINS on behalf of themselves and similarly situated individuals, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 16 - CV 10259 |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| SILVERSTAR, LTD, GOLD STANDARD TRANSPORTATION, INC., and AMAZON.COM, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' JOINT STIPULATION OF SETTLEMENT, FOR APPROVAL OF CLASS CERTIFICATION AND FORM AND MANNER OF CLASS NOTICE, AND FOR FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiffs Theron Bradley, and Tommy Jenkins ("Plaintiffs"), on behalf of themselves and all other similarly situated employees, move this Court for an order preliminarily approving the Parties' Class Action Settlement Agreement (attached hereto as Attachment 1 (hereinafter, the "Settlement Agreement")) and an order approving class certification for settlement purposes and the form and manner of class notice, and scheduling a Fairness Hearing for final approval of settlement. In further support of this Unopposed Motion, the Plaintiffs state as follows:

I.      **BACKGROUND**

      A.      **SUMMARY OF THE COMPLAINT**

On November 1, 2016, Plaintiffs, on behalf of themselves and other similarly situated persons, filed a complaint in the United States District Court for the Northern District of Illinois. The case is presently titled *Bradley v. Silverstar, Ltd., et al.*, Case No. 16 C 10259.   The Complaint alleges violations of the Fair Labor Standards Act, 29 U.S.C.  201, *et seq.* ("FLSA"),

and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL"), (hereafter the "Lawsuit"). Counts I and II of Plaintiffs' Complaint in the Lawsuit ("the Complaint") alleged that Defendant Silverstar paid Plaintiffs and similarly situated employees a fixed daily rate of pay regardless of how many hours they worked each week, and in so doing failed to compensate Plaintiffs at time and a half their regular rate for all time worked in excess of forty hours per week in violation of the FLSA and IMWL. The Complaint also alleges that Plaintiffs were jointly employed by Defendant Gold Standard Transportation, Inc., and Amazon.com, LLC.

Defendants dispute that Plaintiffs and the Members of the Class are owed any wages and have denied any and all violations of the law asserted by Plaintiffs. Defendants also dispute that Plaintiffs and the Class were jointly employed by all Defendants.

### B. SUMMARY OF THE SETTLEMENT TERMS

As set forth more fully herein Class Counsel conducted extensive informal discovery and reviewed hundreds of documents produced by Defendants relating to the time worked by Plaintiffs and similarly situated employees. These documents included payroll records for Plaintiffs and similarly situated employees, time records for Plaintiffs and similarly situated employees, as well as large excel files containing the time that Plaintiffs' and similarly situated employees' "rabbit" devices—used to scan the items they delivered in the course of their work day from Amazon.com clients, through Silverstar—were turned on and off. As Class Counsel reviewed these documents, the Parties engaged in extensive arms-length settlement negotiations, including a court-supervised settlement conference, which was held on September 11, 2017 and resulted in the Settlement Agreement attached hereto as Exhibit A. The Parties believe they are and were fully and adequately informed of all facts necessary to evaluate the case for settlement. Defendants continue to deny any wrongdoing in the matter, and allegations of joint employment by Defendants of Plaintiffs and similarly situated employees, but they evaluated the risk inherent

in proceeding to trial and the costs of extended litigation and determined the settlement reached

was an appropriate compromise to end this litigation.

The named Plaintiffs and their counsel likewise believe the settlement reached in this

matter is a good outcome for Plaintiffs and the putative class. The material terms of the

settlement are as follows, subject to approval by the Court:

1. **Class Definition**: The class of individuals allegedly owed unpaid wages is to be defined as,

   for settlement purposes:

   > The 134 individuals, including the Class Representatives who have been
   > employed as delivery drivers by Defendant Silverstar between June 1, 2016 and
   > April 1, 2017, and whose names are reflected in Exhibit A to the Parties'
   > Stipulation of Settlement.

2. **Settlement Fund**: Defendant Silverstar shall make a total Settlement Payment of Ninety-
   Four Thousand Two Hundred Ninety-Four Dollars and No Cents ($94,294.00) into a
   Qualified Settlement Fund. The settlement fund will be apportioned as follows:

   a. Payment of allegedly owed overtime wages to all Class Members who do not Opt Out
   of this settlement, determined using the formulae set forth below;

   b. Payment to each Named Plaintiff in the amount of Two Thousand Dollars ($2,000.00)
   as an enhancement award for his service to the class, as approved by the Court; and

   c. Payment of attorneys' fees and costs in the amount of up to Thirty Thousand Dollars
   and no Cents ($30,000.00), or the equivalent of approximately thirty percent of the
   Settlement Fund less service payments, as approved by the Court.

3. **Settlement Administration Costs:** The Parties have agreed to use RG/2 Administration as a
   Settlement Administrator in this matter. The Administrator will be charged with issuing the
   Court-approved notice to Class Members and administering the issuance of settlement
   awards to the Class. All administration expenses will be covered by Defendant Silverstar
   separate and apart from the Settlement Amount.

4. **Notice to Class Members:** Notice of the Class Action Settlement with instructions to be
   excluded or object to the settlement shall be mailed via first class mail through the U.S.
   Postal Service, postage pre-paid. *See* Notice of the Class Action Settlement, attached as
   Exhibit B to Attachment 1 to this Motion.

5. **Individual Settlement Payments to the Class**: Class Members who do not exclude
   themselves from this settlement will be eligible to receive a share of the Class Settlement
   Amount based on the following formula:

Class Member's total hours worked over forty per week multiplied by half of Class Member's Regular Rate of Pay per Week.

  i.   For settlement purposes only, 1.5 hours was added to each day a Class Member worked;

  ii.  Each Class Member's Regular Rate will be equal to total pay per week divided by total hours worked per week;

Each eligible Settlement Class Member will receive the greater of the pro rata share of the Settlement Fund as described above or a Minimum Settlement Payment of $50.00.

Each Settlement Payment will be considered wages and will be reported as such on an IRS Form W-2. Appropriate withholding of federal, state, and local income taxes, and the eligible Settlement Class Member's share of Federal Insurance Contributions Act (FICA) taxes shall be deducted from the respective Settlement Payment and reported in the above referenced Form W-2.

d)   Settlement Payment checks will become void 90 days after said checks are issued by the Settlement Administrator. In the event that the sum of Settlement Payment checks that are not negotiated within 90 days of said checks being issued is in excess of $6,029.40, these remaining funds will be redistributed between Class Members on a pro rata basis. In the event the sum of Settlement Payment checks that are not negotiated within 90 days of said checks being issued is less than $6,029.40, said funds will be donated to a 501(c)(3) nonprofit organization chosen by Plaintiffs and approved by the Court.

**4.  Un-negotiated checks:** Un-negotiated checks will become void and will become part of the Remainder Fund. The Remainder Fund will be donated to two nonprofit organization, specifically Raise the Floor Alliance.[1]

5.  **Funding of Settlement Account**: Defendant Silverstar will deposit the Settlement Amount into the Settlement Account subject to the following schedule:

- Within seven (7) days of Preliminary Approval Defendant Silverstar will deposit the estimated cost of Administration Costs in the Settlement Account;

---

[1] Raise the Floor Alliance (RTF) is a Chicago based non-profit whose mission is to ensure that low-wage workers have access to quality jobs and are empowered to uphold and improve workplace standards. RTF achieves its mission by providing research, communications and legal support for efforts to win public and private policy changes that raise the floor for all workers. In addition to RTF's advocacy work in the legislative and regulatory arenas RTF also provides free and direct legal assistance to low wage workers in the greater Chicago area and surrounding suburbs in the area of employment law.

- Within thirty (30) days of Preliminary Approval Defendant Silverstar will deposit the amount of Twenty-Three Thousand Five Hundred Seventy-Three Dollars and Fifty Cents ($23,573.50).

- Within sixty (60) days of Preliminary Approval Defendant Silverstar will deposit the amount of Twenty-Three Thousand Five Hundred Seventy-Three Dollars and Fifty Cents ($23,573.50).

- Within ninety (90) days of Preliminary Approval Defendant Silverstar will deposit the amount of Twenty-Three Thousand Five Hundred Seventy-Three Dollars and Fifty Cents ($23,573.50).

- Within one hundred and twenty (120) days of Preliminary Approval Defendant Silverstar will deposit the amount of Twenty-Three Thousand Five Hundred Seventy-Three Dollars and Fifty Cents ($23,573.50), and the employer's share of payroll taxes due on the settlement awards to Class Members as calculated by the Settlement Administrator.

## II. STANDARD FOR PRELIMINARY APPROVAL

The settlement or compromise of a class action requires this Court's approval. Fed. R. Civ. P. 23€. The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Redman v. Radioshack Corp*., No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. 2014) (*citing Isby, et al. v. Bayh, et al*., 75 F.3d 1191, 1196 (7th Cir. 1996)).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing be given to the Class Members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc*., 327 F.3d 938 (9th Cir. 2003).

## III.     CERTIFICATION OF THE CLASS IS APPROPRIATE

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In evaluating the fairness, reasonableness, and adequacy of the settlement, the Court should view the facts in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 315 (7th Cir. 1980). The Court's role is to determine` whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. *See* H. Newberg on Class Actions, §24.13 at 60 (3d ed. 1992) (hereafter "Newberg"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974).

### A.     Plaintiffs' Class Claims Should be Certified For Settlement Purposes

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. A plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id*.

Second, the action must satisfy one of the conditions of Rule 23(b). *Id*. Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty Class Members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate

6

over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiffs' claims meet the requirements for class treatment of this Lawsuit.[2]

### 1.    Certification Under Rule 23(a)

#### a.    Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. When analyzing whether joinder is impracticable, factors such as judicial economy, geographic diversity of Class Members, and the ability of Class Members to institute individual lawsuits should also be considered. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Id.* at 1333. In this case, the Parties have established that the class is composed of 134 individuals. The size of this putative class easily satisfies Rule 23(a)(1).

#### b.    Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class.  Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 484 (7th Cir. 2012). (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In order to satisfy this requirement, there needs to be just one common

---

[2] Defendants believe that class certification is warranted for settlement purposes only, and reserve all defenses to class certification in the event that the settlement class is not certified. To the extent that Plaintiffs' arguments are not specifically limited to "for settlement purposes only," Defendants do not join in them and specifically reserve their rights to argue that class certification is not appropriate should the Settlement not be Finally Approved, or should it become void for any other reason.

question of law or fact but that common question cannot be just a superficial similarity. *Dukes*, 131 S. Ct. at 2556; *Jamie S.*, 668 F.3d at 497. Not only must the class claims "depend on a common contention," that common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *Jamie* S., 668 F.3d at 497.

Here, Plaintiffs' claims are based on questions of fact and law common to the class. Each Class Member was allegedly employed by Defendants and subject to Defendant Silverstar's alleged compensation practices and policies during the Class period, including, the alleged practice by Defendant Silverstar of not compensating Plaintiffs and the Class at time and a half their regular rate of pay for all time worked in excess of forty hours per week.

The common questions are: a) whether Defendant Silverstar failed to pay Plaintiffs and the Class for all time worked in excess of forty hours per week; and b) whether Plaintiffs and the Class were entitled to receive overtime wages pursuant to the FLSA and IMWL. The resolution of these questions will resolve the matter for the entire class.

### c.     Typicality -- Rule 23(a)(3)

The question of typicality is closely related to the preceding question of commonality. The Seventh Circuit has held that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). To meet the typicality requirement, there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group. *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).  Plaintiffs alleged Defendants had a policy of not paying overtime wages at time and a

half its employees' regular rate for all time worked in excess of forty hours per week. The claims of Plaintiffs and Class Members arise from the same alleged conduct of Defendants.

### d. Adequacy of Representation -- Rule 23(a)(4)

Rule 23(a)(4) requires the named class representative "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Lau v. Arrow Fin. Servs., LLC*, 2007 U.S. Dist. LEXIS 40066, 17 (N.D. Ill. 2007)(citing *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)). The burden of demonstrating that the class representative is adequate is not heavy" *Sledge,* 182 F.R.D. at 259.

Plaintiffs satisfy this standard here. Plaintiffs do not have antagonistic or conflicting claims with other members of the class. Plaintiffs and the class were all employed by Defendants in the State of Illinois and all seek unpaid wages pursuant to the FLSA and the IMWL. Plaintiffs also have a sufficient interest in the outcome to ensure vigorous advocacy. Adequacy requires the Named Plaintiffs to be conscientious and to "understand the basic facts underlying his claims." *Id*. Plaintiffs here understand the general foundation of the case. They participated in the Parties' informal discovery process, and assisted Class Counsel during the informal discovery process while the case was stayed. Plaintiffs were also active in negotiations to explore resolution of this matter. This qualifies the Named Plaintiffs as "conscientious representative plaintiff" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

As explained, *infra*, Section V(C), the Named Plaintiffs' attorneys are qualified and able to conduct the proposed litigation vigorously.

**B.      This Action Satisfies the Requirements of Rule 23(b)**

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs seek certification under Rule 23(b)(3). *See Allen v. International Truck and Engine Corp*., 358 F.2d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining "superiority", the court should look to non-exhaustive factors: the interest of class members in individually controlling separate actions, any litigation concerning the controversy already commenced, the desirability or undesirability of concentrating the litigation, and the manageability of the class action. *Id*. The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll International Inc*., 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class claims seeking unpaid wages and statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim for unpaid wages under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA)); *Wang v. Chinese*

*Daily News, Inc.*, 231 F.R.D. 602, 612-14 (C.D. Cal. 2005) (claim, *inter alia*, for unpaid wages and itemized payroll statements under California law).

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issue is whether Defendant Silverstar's compensation policies violated the FLSA 29 U.S.C. §201 *et seq.*, and the IMWL 820 ILCS 105/1, *et seq.* The predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D. Ill. 1995). In this case, there is a common nucleus of operative fact that concerns Defendant Silverstar's compensation policies and Defendants Gold Standard Transportation, Inc., and Amazon.com, LLC's alleged relation to Plaintiffs and similarly situated employees as their joint employer with Defendant Silverstar.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially *dozens* of individual lawsuits and piecemeal litigation.

### C.     Plaintiffs' Counsel Should be Appointed Class Counsel

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In this case, all these requirements are met. Plaintiffs' attorneys have extensive experience and expertise in complex employment litigation and class action proceedings, and are qualified and able to conduct this litigation. Plaintiffs' counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour

11

cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA, the IDTLSA and the ECA and proceeded as Rule 23 class actions and/or collective actions under §216(b) of the FLSA.[3]

---

[3] Plaintiffs' Counsel have regularly been designated as class counsel in class action employment litigation including: *Munoz v. Wheeler Trailer, Inc.* 16 C 8722 (N.D. Ill) (Dkt. No. 36); *Arroyo v. Andrew Staffing* Case No. 16 CH 08718 (Cook Cty. Cir. Ct, IL., November 2, 2017)(Jacobius J.); *Cornejo v. Titan Metals, Inc.,* 16 C 4053 (N.D. Ill) (Dkt. No 36); *Lucas .v Ferran Candy Company et al.* 13 C 1525 (N.D. Ill) (Dkt. No.194); *Baker v. Elite Staffing, Inc.,* 15 C 3246 (N.D.Ill) (Dkt. No. 55); *Lucas .v Ferran Candy Company et al.* 13 C 1525 (N.D. Ill) (Dkt. No.194); *Romero v. Active Roofing Company, Inc.,* Case No. 15 C 1347 (N.D. Ill) (Dkt. No 109); *Mejia v. Windward Roofing and Construction, Inc.,* Case No. 15 C 5687 (N.D. Ill) (Dkt. No 53); *Gutierrez v. Addison Hotels, LLC* Case No. 15 C 2021 (N.D. Ill.) (D.E. 44) (Final Approval 5/9/16); *McDowell et al. v. Accurate Personnel, LLC* Case No. 14 C 8211 (N.D. Ill.) (D.E. 68) (Preliminary Approval 5/4/16); *Hoffman et al. v. RoadLink Workforce Solutions, LLC et al.,* Case No. 12 C 7323 (N.D. Ill.) (D.E. 154) (Final Approval 1/29/16); *Mayfield et al. v. Versant Supply Chain, Inc. et al.,* Case No. 14 C 7024 (N.D. Ill.) (D.E. 61) (Final Approval 12/15/1); *Ramirez v. Staffing Network et al.,* Case No. 13 C 6501 (N.D. Ill.) (D.E. 142)(Final Approval 7/24/15); *Martinez et al. v. Staffing Network et al.,* Case No. 13 C 1381 (N.D. Ill.) (D.E. 143) (Final Approval 6/30/15); *Alvarado et al. v. Aerotek,* Case No. 13 C 6843 (Final Approval 1/29/2015); *Dickerson v. Rogers' Premier Enterprises, LLC* Case No.13 C 7154 (Final Approval 01/07/15); *Hernandez v. ASG Staffing, Inc.,* Case No. 12-2068 (Final Approval 12/11/14); *Blancas et al. v. Cairo and Sons Roofing, Co. Inc.,* Case 12 C 2636 (Final Approval 12/12/2013); *Dean et al. v. Eclipse Advantage Inc., et al* Case 11 C 8285 (Final Approval 12/17/2013); *Gallegos et al v. Midway Building Services, LTD et al.,* Case No. 12 C 4032 (Final Approval 10/02/2013); *Craig v. EmployBridge et al.,* Case No. 11 C 3818 (Final Approval 04/04/13); *Smith et al. v. Dollar Tree Distribution, Inc.,* Case No. 12 C 3240 (Final Approval 2/27/13); *Ramirez et al. v. Paramount Staffing of Chicago, Inc.,* Case No. 11 C 4163 (Final Approval 1/29/13); *Bautista et al v. Real Time Staffing, Inc.,* Case No. 10 C 0644 (Final Approval 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.,* Case No.11 C 2229 (Final Approval 07/12/12); *Jones et al v. Simos Insourcing Solutions, Inc.,* Case No. 11 C 3331 (Final Approval 05/04/12); *Francisco et al v. Remedial Environmental Manpower, Inc. et al.,* Case No. 11 C 2162, (Final Approval 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.,* Case No. 10 C 6083 (Final Approval 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.,* Case No. 11 C 3818 (Final Approval 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.,* Case No. 08 C 4912 (Final Approval 03/29/10); *Arrez et al v. Kelly Services, Inc.,* Case No. 07 C 1289 (Final Approval 10/08/09); *Acosta et al v. Scott Labor LLC et al.,* Case No. 05 C 2518 (Final Approval 03/10/08); *Ortegón et al v. Staffing Network Holdings, LLC et al.,* Case No. 06 C 4053 (Final Approval 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.,* Case No. 06 C 5066 (Final Approval 04/03/07); *Camacho et al v. Metrostaff, Inc. et al.,* Case No. 05 C 2682 (Final Approval 05/17/06).

**IV.     THE PARTIES' PROPOSED SETTLEMENT**

After substantial informal discovery, followed by extensive negotiations, including numerous in-person and telephonic meetings between counsel and between Counsel and their clients, investigation by the Parties and their Counsel, and a settlement conference supervised by this Court, the Parties have reached an agreement to settle Plaintiffs' claims on a class-wide basis. A summary of the settlement terms are outlined below.

**A.     The Settlement Class Definition and Settlement Period**

As part of the Settlement, the Class is defined as:

> The 134 individuals, including the Class Representatives who have been employed as delivery drivers by Defendant Silverstar between June 1, 2016 and April 1, 2017, and whose names are reflected in Exhibit A to the Parties' Stipulation of Settlement.

**B.     The Settlement Amount**

*See* **Part I.B.,** *supra*

**C.     Release and Bar of Claims**

All Class Members who have not excluded themselves from the Settlement by filing timely "opt out" notices with the claims administrator shall be deemed to have released Defendants and the "Released Parties" as defined in paragraph 37 of the Parties Stipulation of Settlement, from any obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, which are based on or arise out of the same incidents, events, transactions, circumstances, or occurrences that were the basis of this lawsuit, whether known or unknown, and whether anticipated or unanticipated, including claims that the Class Member does not know of or suspect to exist in his/her favor, and which accrued during the period ending on the date of the Order of Preliminary Approval, for any type of relief based on or arising under the Illinois Minimum Wage Law 820 ILCS 105 et seq., and the Illinois Wage Payment and

Collection Act 820 ILCS 115 et seq., including without limitation, claims for wages, penalties, interest, attorneys' fees, litigation costs, or equitable relief.

Additionally, all Class Members who do not opt out of this litigation and negotiate their settlement awards checks will be deemed to have consent to join this litigation and will release Defendants and the released Parties of any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, which are based on or arise out of the same incidents, events, transactions, circumstances, or occurrences that were the basis of this lawsuit, whether known or unknown, and whether anticipated or unanticipated, including claims that the Opt-In does not know of or suspect to exist in his/her favor, and which accrued during the period ending on the date of the Order of Preliminary Approval, for any type of relief based on or arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*, including without limitation, claims for wages, penalties, liquidated damages, interest, attorneys' fees, litigation costs, or equitable relief.

### D. Named Plaintiffs' Payment

In addition, as part of the Agreement, each Named Plaintiff will receive a payment of Two Thousand Dollars and No Cents ($2,000.00) as an enhancement award for Named Plaintiffs' service to the Class. Plaintiffs here understand the foundation of the case and the terms of the settlement. They participated in the Parties' informal discovery process, assisted Class Counsel in reviewing and analyzing documents produced by Defendants, and were active in negotiations to explore resolution of this matter. Plaintiffs attended the Court supervised settlement conference in this matter. Plaintiffs also stood ready to participate as necessary in this litigation to ensure a successful outcome at trial. Plaintiff's role in obtaining this positive outcome for Class Members warrant the service award of $2,000.00 sought and is consistent with the awards granted by other court in this district in similar litigation. *In re AT&T Mobility*

*Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, (N.D. Ill. 2011)(awarding service payment of $5,000.00 while noting that the median service payment is $16,000.00); *See also Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781, (N.D. Ill. 2015)(awarding service payment of $5,000.00).

### E.    Attorneys' Fees

Finally, pursuant to the Settlement, up to thirty percent (30%) of the Settlement Amount, or $30,000.00, as approved by the Court, will be paid to Class Counsel as payment for all past and future attorneys' fees that have been or will be expended and for all costs incurred and that have or will be incurred in seeing this matter through Final Approval, securing the Final Order, and defending the settlement, including the conducting of any appellate action**.** Payment of attorneys' fees and costs pursuant to this section shall be paid from the Settlement Amount consistent with applicable legal precedent for wards of attorneys' fees under Rule 23.

## V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.    Settlement and Class Action Approval Process

"Federal courts naturally favor the settlement of class action litigation." <u>Isby</u>, 75 F.3d at 1196; *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class members, would be impracticable. The proposed Settlement therefore is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this Motion, Plaintiffs request that this Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class Members to receive Notice of the proposed Settlement's terms and the process to object or be excluded from the of the date and time of the fairness hearing, at which Class Members may be heard regarding the Settlement,

and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

**B.  The Criteria for Preliminary Settlement Approval Are Satisfied.**

**1.  The proposed Settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the Class Members to consider its terms.**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, at 1276. In affirming the trial court's approval of the settlement in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.
>
> *Id*.

As various courts have noted, "the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement" is viewed as the "most important factor relative to the fairness of a class action settlement." *Redman*, 2014 U.S. Dist. LEXIS 15880, at *9 In this case, Defendants have advanced various arguments that they believe are viable defenses to both

liability and class certification and, at a minimum, have demonstrated that prevailing on the merits or even certifying a class is uncertain if this matter proceeds in the absence of a settlement. For example, Defendant Silverstar has argued that even if Plaintiff and the Class had been entitled to overtime wages, said overtime wages would have been offset by an hour of lunch Plaintiffs and the Class took each day during their work week. Defendant Silverstar has also argued that it did not actually pay Plaintiffs and the Class a fixed day rate, but rather paid an hourly rate to Plaintiffs and the Class, with a guaranteed minimum pay per day, and that said practice complied with the FLSA and IMWL. Additionally, Defendants Gold Standard and Amazon.com have argued that the evidence in this matter did not indicate that either had any control of Plaintiffs and the Class or that either acted as a joint employer with Silverstar.

Given the uncertainty of whether the claims could be certified for class treatment, Defendant's defenses on the merits and the difficulties of proof, the terms of the Settlement Agreement compromising the class are fair and reasonable. Counsel for both Parties are experienced in class action litigation. The Parties negotiated a Class Settlement Fund which Plaintiffs' Counsel believe will provide Class Members who make a successful claim on the Class Settlement Fund with substantial monetary relief based on Plaintiffs' theory of liability. Given the potentially viable defenses asserted by Defendants, and the recovery that Plaintiff and Class Members will receive, approval of this settlement is warranted.

**2. The Settlement Was Reached Through Arm's-Length Negotiations.**

A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)(internal citation omitted). *See also Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has

been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.")

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of wage and hour violations in particular. In negotiating this settlement, Plaintiffs' counsel had the benefit of years of experience advocating the interests of low wage laborers combined with an in-depth familiarity with the facts of this case. In addition, Plaintiff's Counsel have successfully litigated and resolved over 30 class actions involving low wage laborers. Similarly, Counsel for Defendants are experienced class action litigators.

The settlement was reached after a period of extensive investigation, formal and informal discovery, frequent meetings and discussions between Class Counsel and the Named Plaintiffs, and discussions between Class Counsel and Defendants' Counsel, and a settlement conference. The settlement negotiations were informed by Defendants' production of relevant records. After several months of negotiations, the Parties reached agreement to resolve this litigation, the terms of which are reflected in the Stipulation of Settlement attached hereto as Attachment 1. Plaintiffs' Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class.

### 3.     The Settlement Provides Substantial Relief for Class Members

The Settlement provides relief for all Class Members. Assuming all Class Members claim into the fund, each class Members will receive approximately 84% of the value of their Claim based on Plaintiff's theory of the case, or a minimum payment of $50.00, whichever is greater, without the risk or expense of trial. The average minimum settlement award payment that Class Members are expected to receive is estimated at $452.63, while the largest settlement award payment that Class Members would be expected to receive is $2,667.21.

4.      **Payment to the Named Plaintiffs is Appropriate and Reasonable.**

The Named Plaintiffs shall receive a payment separate from the Class Settlement Fund as specified in Section VIII of the Settlement Agreement, as an enhancement award for her role in litigating this matter. However, for purposes of their claims for unpaid wages, the Named Plaintiffs' recovery will be equivalent to that of other Class Members as their settlement share will be calculated the exact same way as all other Class Members. As a result, the Named Plaintiffs are not receiving preferential treatment in the settlement of their unpaid wage claims.

5.      **Plaintiffs' Request for Fees and Costs is Fair and Reasonable**

Section 14 of the Settlement Agreement provides that Plaintiffs' Counsel will receive approximately thirty percent (30%) of the Settlement Amount (or $30,000.00), as approved by the Court, for all attorneys' fees and costs incurred and to be incurred in seeing this matter through Final Approval, including: (i) obtaining Preliminary Approval from the Court; (ii) responding to inquiries from and otherwise assisting Class Members regarding the Settlement; (iii) assisting in the review of claims submitted by Class Members; (iv) assisting in resolving any objections; and (v) defending the Settlement and securing the Final Order, including the conduct of any appellate action.

When the amount of the Settlement Amount in this case was negotiated, Defendants' offer was an "all in" global settlement offer, which included all aspects of the settlement consideration relief to the class, attorneys' fees, expenses, and costs. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gement*, 444 U.S. 472,

478 (1980). The common fund doctrine permits plaintiffs' counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." *Id.* at 563 (*citing Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1989) (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund"). Where a common fund is created in return for release of a defendant's liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. *Skelton*, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including this Circuit, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When determining a reasonable fee in a class action settlement, courts in the Seventh Circuit typically use the percentage basis rather than a lodestar or other basis. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). In deciding fee levels in common fund cases, the Seventh Circuit has consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007)(*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). The normal rate of compensation in

the market is one-third of the common fund recovered because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment. *George v. Kraft Foods Global, Inc*., 2012 U.S. Dist. LEXIS 166816, 7-9 (N.D. Ill. 2012). See also *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)(The typical contingent fee is between 33 and 40 percent in common fund cases.) *See also Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. Ill. 2007)(vacating district court's decision to cap fees at 15% of multi-million dollar common fund after finding court misapplied common fund doctrine in case involving fee-shifting statute); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7*th* Cir. 2001)(vacating district court's decision to cap fees at 10% of multi-million dollar common fund after finding court had failed to follow market-based approach).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage and hour cases bought under the IMWL, and IWPCA by both federal and state court judges. In *Arrez v. Kelly Services, Inc.*, Case No. 07 C 1289, the court approved the IWPCA and IDTLSA classes and awarded class counsel, including Plaintiffs' Counsel in the instant matter, 30% of the $11,000,000.00 common fund. Indeed, courts around the country frequently award fees in common fund cases in the 30% to 50% range. *See* 18 Class Action Reports at 537 (1995).

The fee requested here, representing approximately thirty percent of the total Settlement Amount is less than the typical of amounts of awards made and fees negotiated in the Chicago area.

## VI. CONCLUSION

For the foregoing reasons, the Plaintiffs request that the Court: (i) grant this Unopposed Motion for Preliminary Approval of the Stipulation of Settlement; (ii) approve class certification of the settlement class identified herein; (iii) approve the Notice of Class Action, Proposed

Settlement and Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; and (vi) enter the Proposed Order of Preliminary Approval attached hereto as Exhibit E to Attachment 1.

                    Respectfully submitted,

Dated: December 18, 2017

                                      <u>s/Alvar Ayala</u>
                                        Alvar Ayala
                                        Christopher J. Williams
                                        Workers' Law Office, PC
                                        53 W. Jackson Blvd., Suite 701
                                        Chicago, Illinois 60604
                                        (312) 795-9121

                                        Attorneys for Plaintiffs